Todd E. Soloway
tsoloway@pryorcashman.com
Jonathan T. Shepard
jshepard@pryorcashman.com
PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022
Tel: (212) 421-4100
Fax: (212) 326-0806

Attorneys for Defendants/Counterclaimants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – –X

ARCON SOLUTIONS, LLC,                              :
                                                   :
        Plaintiff/Counterclaim Defendant,       :    Case No. 08 CV 02050 (RMB)
                                                   :
        vs.                                     :    **ANSWER AND COUNTERCLAIMS**
                                                   :
EAST 29TH STREET, LLC and ESPAIS PROMOCIONS :
IMMOBILIARIES EPI, S.A.,                            :    **Demand for Jury Trial**
                                                   :
        Defendants/Counterclaimants,            :
                                                   :
        vs.                                     :
                                                   :
MICHAEL FALKE and MARK GEMIGNANI,                  :
                                                   :
        Additional Counterclaim Defendants.     :
                                                   :

– – – – – – – – – – – – – – – – – – – – – – – – – – – –X

Defendants East 29th Street, LLC ("East 29th Street") and Espais Promocions

Immobiliaries EPI, S.A. ("Espais" and together with East 29th Street, "Defendants") by and

through its attorneys, Pryor Cashman LLP, as and for their answer to the complaint filed on

February 29, 2008 (the "Complaint") by plaintiff Arcon Solutions, LLC ("Plaintiff"), herein

allege as follows:

1.      Deny knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 1 of the Complaint.

2.      Deny knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 2 of the Complaint.

3.      Admit the allegations in paragraph 3 of the Complaint.

4.      Admit the allegations in paragraph 4 of the Complaint.

5.      Deny the allegations in paragraph 5 of the Complaint, and respectfully refer the

Court to the development management agreement, dated August 1, 2006 (the "Development

Management Agreement"), for a complete statement of the contents thereof, except to deny

knowledge or information sufficient to form a belief as to whether the Court has personal

jurisdiction over the parties.

6.      Deny knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 6 of the Complaint.

7.      Deny the allegations in paragraph 7 of the Complaint, and respectfully refer the

Court to the Development Management Agreement for a complete statement of the contents

thereof.

8.      Deny the allegations in paragraph 8 of the Complaint, except to admit that Espais

assigned its rights and obligations under the Development Management Agreement to East 29th

Street on September 29, 2006, and respectfully refer the Court to the Development Management
Agreement for a complete statement of the contents thereof.

9.      Admit the allegations in paragraph 9 of the Complaint.

10.      Admit the allegations in paragraph 10 of the Complaint, and respectfully refer the
Court to the Development Management Agreement for a complete statement of the contents
thereof.

11.      Deny knowledge or information sufficient to form a belief as to the truth of the
allegations in paragraph 11 of the Complaint, except to admit that an opportunity was presented
whereby the number of floors of the building located at 39 E. 29th St., New York, New York (the
"Building") could be increased by four floors.

12.      Admit the allegations in paragraph 12 of the Complaint.

13.      Deny the allegations in paragraph 13 of the Complaint.

14.      Deny the allegations in paragraph 14 of the Complaint.

15.      Deny the allegations in paragraph 15 of the Complaint, and respectfully refer the
Court to the audit report for a complete statement of the contents thereof.

16.      Deny the allegations in paragraph 16 of the Complaint.

17.      Deny the allegations in paragraph 17 of the Complaint.

18.      Deny the allegations in paragraph 18 of the Complaint.

19.      In response to paragraph 19 of the Complaint, Defendants repeat and reallege
their responses to paragraphs 1 through 18 of the Complaint as if fully set forth herein.

20.      Deny knowledge or information sufficient to form a belief as to the truth of the
allegations in paragraph 20 of the Complaint.

21.      Deny knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 21 of the Complaint.

22.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint.

23.    Deny the allegations in paragraph 23 of the Complaint.

24.    In response to paragraph 24 of the Complaint, Defendants repeat and reallege their responses to paragraphs 1 through 18 of the Complaint as if fully set forth herein.

25.    Deny the allegations in paragraph 25 of the Complaint.

26.    Deny the allegations in paragraph 26 of the Complaint.

27.    In response to paragraph 27 of the Complaint, Defendants repeat and reallege their responses to paragraphs 1 through 18 of the Complaint as if fully set forth herein.

28.    Deny the allegations in paragraph 28 of the Complaint, and respectfully refer the Court to the Development Management Agreement for a complete statement of the contents thereof.

29.    Deny the allegations in paragraph 29 of the Complaint, and respectfully refer the Court to the Development Management Agreement for a complete statement of the contents thereof.

30.    Deny the allegations in paragraph 30 of the Complaint.

31.    Deny the allegations in paragraph 31 of the Complaint, except to admit that neither Espais nor East 29th Street ever approved a $5,000,000 cost overrun in connection with the construction of the four additional floors.

32.    Deny the allegations in paragraph 32 of the Complaint, except to aver that Arcon breached the Development Management Agreement and otherwise violated its obligations thereunder.

33.    Deny the allegations in paragraph 33 of the Complaint.

34.    In response to paragraph 34 of the Complaint, Defendants repeat and reallege their responses to paragraphs 1 through 18 of the Complaint as if fully set forth herein.

35.    Deny the allegations in paragraph 35 of the Complaint.

36.    Deny the allegations in paragraph 36 of the Complaint, and respectfully refer the Court to the Development Management Agreement for a complete statement of the contents thereof.

37.    Deny the allegations in paragraph 37 of the Complaint.

38.    Deny the allegations in paragraph 38 of the Complaint, except to aver that Arcon fraudulently sought to increase its base fee as part of its pattern and practice of fraudulent activity.

39.    Deny the allegations in paragraph 39 of the Complaint.

40.    Deny the allegations in paragraph 40 of the Complaint.

41.    In response to paragraph 41 of the Complaint, Defendants repeat and reallege their responses to paragraphs 1 through 18 of the Complaint as if fully set forth herein.

42.    Deny the allegations in paragraph 42 of the Complaint.

43.    Deny the allegations in paragraph 43 of the Complaint, and respectfully refer the Court to the Development Management Agreement for a complete statement of the contents thereof.

44.    Deny the allegations in paragraph 44 of the Complaint, except to aver that Arcon breached the Development Management Agreement and otherwise violated its rights thereunder.

45.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Complaint.

46.    Deny the allegations in paragraph 46 of the Complaint.

47.    Deny the allegations in paragraph 47 of the Complaint.

48.    In response to paragraph 48 of the Complaint, Defendants repeat and reallege their responses to paragraphs 1 through 18 of the Complaint as if fully set forth herein.

49.    Deny the allegations in paragraph 49 of the Complaint.

50.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 of the Complaint.

51.    Deny the allegations in paragraph 51 of the Complaint.

52.    Deny the allegations in paragraph 52 of the Complaint.

53.    In response to paragraph 53 of the Complaint, Defendants repeat and reallege their responses to paragraphs 1 through 18 of the Complaint as if fully set forth herein.

54.    Deny the allegations in paragraph 54 of the Complaint, and respectfully refer the Court to the Development Management Agreement for a complete statement of the contents thereof.

55.    Admit the allegations in paragraph 55 of the Complaint, and aver that Espais was a party to the Development Management Agreement.

56.    Deny the allegations in paragraph 56 of the Complaint.

57.    Deny the allegations in paragraph 57 of the Complaint.

58.    Deny the allegations in paragraph 58 of the Complaint.

## COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

Defendants/Counterclaimants East 29th Street, LLC ("East 29th Street") and Espais Promocions Immobiliaries EPI, S.A. ("Espais" and together with East 29th Street, "Counterclaimants"), by and through their attorneys, Pryor Cashman LLP, as and for their

counterclaims against Counterclaim Defendant Arcon Solutions, Inc. ("Arcon" or "Counterclaim

Defendant") and Additional Counterclaim Defendants Michael Falke ("Falke") and Mark

Gemignani ("Gemignani" and together with Falke, "Additional Counterclaim Defendants" or

"Individual Counterclaim Defendants"), herein allege as follows:

## PARTIES

1.      East 29th Street is a limited liability company organized under the laws of the

State of New York with its principal place of business in New York, New York.

2.      Espais is a corporation organized under the laws of Spain with its principal place

of business in Barcelona, Spain.

3.      Arcon is a limited liability company organized under the laws of the State of

Florida with its principal place of business in the State of Florida.

4.      Upon information and belief, Falke is a resident of Miami-Dade County, Florida.

5.      Upon information and belief, Gemignani is a resident of Miami-Dade County,

Florida.

## JURISDICTION AND VENUE

6.      This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. §

1367 (a), in that the counterclaims arise out of the same transaction or occurrence that is the

subject matter of the claims alleged in the Complaint.

7.      This Court also has original jurisdiction over this action pursuant to 28 U.S.C. §

1332, as a civil action between citizens of different states where the amount in controversy

exceeds the sum of $75,000 exclusive of interests and costs.

8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a)(1),(2) and/or (3),

and Article 11.8 of the Development Management Agreement further states that the "venue for

any claims or proceedings shall be in, any court serving New York City, New York."

**ALLEGATIONS COMMON TO ALL COUNTERCLAIMS**

**A.**   **Development of Relationship of Mutual Trust Between Espais and Arcon**

9.      Espais is a real estate development company with its principal place of business in Barcelona, Spain.

10.     East 29th Street desired to construct a first class residential condominium building comprised of 132 units on a parcel of property located at 39-45 East 29th Street, New York, which it had acquired on or about September 29, 2006 (the "Building").

11.     Under normal circumstances, the principals of East 29th Street who are based in Barcelona and are experienced real estate developers, would have employed their own development company, Espais, to run the project including all aspects of pre-construction, construction and sales.

12.     But Espais and the principals of East 29th Street had not previously been involved in a real estate development project in New York City.

13.     As a result of Espais' lack of local project development experience, East 29th Street determined that it needed to retain a real estate development management company based in the United States to serve as its development manager in connection with the construction of the Building.

14.     Thereafter, East 29th Street retained Espais and Espais in turn engaged in discussions with Arcon to serve as the development manager.

15.     The two principals of Arcon, Falke and Gemignani, represented to Espais that they had over 45 years of combined experience in the commercial real estate and construction industry together with an in-depth knowledge and understanding of the New York marketplace.

16.    On or about August 1, 2006, in reliance on Arcon's extensive self-represented experience as a project development manager, Espais and Arcon entered into a development management agreement (the "Development Management Agreement")[1] pursuant to which Arcon agreed to coordinate the acquisition, development and construction of the Building and the marketing and sales of the residential units (the "Development Project"), while Espais monitored the development remotely from Spain.

17.    Evidencing the good faith that it placed in Arcon and its principals, Falke and Gemignani, to faithfully fulfill their duties under the Development Management Agreement, East 29th Street, opened a Business Checking Account (the "East 29th Street Account") with Wachovia Bank, N.A. ("Wachovia") in Miami, Florida, and provided, inter alia, that Falke, the Chairman and Chief Executive Officer of Arcon, would have authority to make pre-approved withdrawals from the East 29th Street Account in connection with the Development Project.

**B.    Arcon's Duties under the Development Management Agreement**

18.    Article 1.1 of the Development Management Agreement specifically states:

**[Arcon as] Development Manager shall use its best efforts, skill, judgment and abilities in the discharge of its duties under this Agreement.**

19.    Pursuant to this Article of the Development Management Agreement, Arcon was required to use these **"best efforts"** to perform its duties under the agreement, including, but not limited to:

- Coordinate with Espais and develop a project budget (Development Management Agreement ¶ 1.2(f));

- Provide regular monitoring of the approved estimate of construction costs, and to identify any variances between actual and budgeted or estimated items, report discovered overages to Espais and make recommendations to eliminate

---

[1]  On September 29, 2006, Espais assigned its rights under the Development Management Agreement to East 29th Street.

or reduce such overages (Development Management Agreement ¶1.2(g));

- Obtain the consent of Espais concerning any construction change order that constituted a material deviation from the approved plans or specifications or will cause the aggregate amount of the budget to be exceeded (Development Management Agreement ¶1.2(v); Amendment to Development Management Agreement ¶ 2);

- Provide Espais with information in connection with any revisions or updates to the construction project costs on a quarterly basis reflecting changes therein approved by Espais (Development Management Agreement ¶1.2(cc)); and

- Obtain the consent of Espais for individual disbursements in excess of $5,000 in connection with the Development Project (Development Management Agreement ¶ 7.1(a)).

**C.**     **Opportunity to Add Four Additional Floors to Building**

20.     In or about February 2007, in the midst of the Development Project in which the Building was already being erected, Arcon informed Espais and East 29th Street about an opportunity whereby the overall number of floors of the Building could be increased by four floors.

### i) Arcon's Initial Budget and Profit Analysis for the Four Additional Floors

21.     In order to properly evaluate this opportunity in which a decision needed to be made in short order because additional structural support would have to be immediately added to the Building's foundation in order to construct the additional four floors, Espais and East 29th Street requested that Arcon provide a detailed cost analysis for the construction of the additional four floors of the Building together with an analysis of the potential profits to be derived therefrom.

22.     Pursuant to Espais' repeated requests for this cost/profit analysis, Arcon, on or about March 2, 2007, advised Espais that the hard costs in connection with the construction of the additional four floors would be approximately $9,000,000 (the "Arcon Initial Budget").

23.     Arcon further represented that Espais could derive a profit of approximately $12,500,000 by constructing the four additional floors.

24.     On or about March 2, 2007, in reliance on Arcon's Initial Budget, profit analysis and extensive self-represented experience as a project development manager throughout the United States and specifically in the New York market, East 29th Street agreed to purchase the air rights over property located at 37 East 29th Street in order to construct the four additional floors on the Building.

### ii) Arcon's Exorbitant Budget Increases

25.     As subsequent developments revealed, Arcon had done little to no investigation of the potential costs for the addition to the project and numerous instances exposed its bad faith conduct throughout the project.

26.     Less than one month later, on or about March 30, 2007, Arcon informed Espais and East 29th Street that the hard costs associated with the construction of the four additional floors would be $10,300,000, an increase of $1,300,000 from the amount set forth in Arcon's Initial Budget.

27.     Remarkably, on or about July 16, 2007, a mere four months after Arcon provided its Initial Budget, Arcon submitted a revised budget to Espais reflecting hard costs of approximately $14,000,000 for the additional four floors.

28.     This project budget figure propounded by Arcon was nearly $5,000,000, or 55% more than Arcon's Initial Budget.

29.     In a bald attempt to justify this outlandish budget increase, Arcon admitted to Espais that it prepared the Arcon Initial Budget based upon limited information and, initially, without the benefit of any subcontractor bids.

30.     Neither Espais nor East 29th Street ever approved these massive cost overruns and repeatedly notified Arcon that such overruns were completely unacceptable as Espais, in its vast experience as a real estate development manager, had never encountered a cost overrun on a project greater than 10%.

31.     Arcon's inexplicable error in compiling the Initial Budget for the four additional floors based upon limited information and without obtaining comparable quotations from subcontractors constitutes gross negligence under Article 2.1 of the Development Management Agreement, and directly resulted in a gross deviation between Arcon's projected and actual construction costs that was completely above and beyond all norms established by industry standards.

### D.     Arcon's Additional Material Breaches of the Development Management Agreement

#### i) Unauthorized Execution of Construction Amendment/Bonus Program

32.     Arcon's performance led Espais and East 29th Street to closely review its prior practices on the project. This review revealed unexplained cost overruns and gross misconduct, examples of which are set forth below.

33.     Arcon executed a construction contract with Gotham Construction Contractors ("Gotham") in connection with the construction of the Building that contemplated an addendum to such contract that contained open line-item prices for various construction tasks (the "Construction Amendment").

34.     Arcon executed the Construction Amendment without Espais' or East 29th Street's consent.

35.     The Construction Amendment enabled Gotham to significantly mark-up the prices that it charged for numerous construction tasks, which, in turn, subjected Espais and East

29th Street to dramatic price fluctuations for construction costs in connection with the Development Project.

36.    Furthermore, Arcon established a bonus incentive program, pursuant to which Gotham and/or subcontractors would be entitled to bonus payments upon meeting certain milestones of the Development Project, without Espais' or East 29th Street's consent.

### ii) Failure to Provide Monthly Reports of Construction Costs

37.    Espais' ability to monitor the construction costs in connection with the Development Project was severely impaired by Arcon's repeated failure to provide timely monthly reports, if at all, from February 2007 through September 2007 concerning the progress and costs associated with the Development Project, despite Espais' numerous requests for such reports.

### iii) Unilateral Changes to Apartment Fixtures and Features

38.    Arcon made unilateral changes in connection with the construction of the additional four floors, including, but not limited to, modifying apartment layouts and ceiling heights and upgrading apartment fixtures and features without Espais' consent.

### iv) Insufficient Analysis and Preparation of Air Rights and 421(a) Tax Abatement Certificates

39.    Arcon failed to employ its best efforts in analyzing the air rights and 421(a) tax abatement certificates required in connection with the construction of the four additional floors.

40.    This failure threatened to jeopardize the entire Development Project. The construction lender threatened to pull the loan associated with the construction of the additional four floors unless such certificates and air rights were in place, and Espais and East 29th Street were prohibited from marketing its most valuable condominium penthouse units.

**v)  Unilateral Attempt to Increase Base Fee for Four Additional Floors**

41.    Arcon sought to increase its base fee by approximately $350,000 under the Development Management Agreement by submitting a reimbursement line-item request to the construction lender associated with the Development Project for such amount without Espais' or East 29th Street's consent.

**vi)  Pre-payment of Arcon Performance Fee**

42.    With an understanding that Arcon would meet certain milestones in connection with the construction of the four additional floors, Espais and East 29th Street prepaid a $250,000 performance fee to Arcon.  This fee was paid to Arcon on the basis that it would complete the construction of the additional four floors in a satisfactory manner, which, as Arcon's significant cost  overruns demonstrate, was clearly was not the case.

43.    Accordingly, Espais and East 29th Street demand that Arcon return this fee.

**vii)  Unreasonable Delay in Filing Amendment to
       Condominium Offering Plan**

44.    Espais and East 29th Street's ability to market the most valuable condominium units was also hampered by Arcon's unreasonable delay in filing the 4th amendment to the condominium offering plan in connection with the Development Project.

45.    As a result of the foregoing, Arcon violated the terms of the Development Management Agreement by failing to use its best efforts to perform numerous services and functions, including, but not limited to, Arcon's:

- Execution of a construction contract with Gotham that contemplated an addendum that contained open line-item prices for various construction tasks, which subjected Espais to dramatic price fluctuations for construction costs in connection with the Development Project;

- Failure to substantially develop an accurate Development Project budget for the additional four floors of the Building;

- Failure to monitor the costs associated with the construction of the additional four floors of the Building and utilize its best efforts to identify any variances between actual and budgeted or estimated items;

- Failure to timely report budget overages in connection with the construction of the additional four floors of the Building and not making recommendations to eliminate or reduce such overages;

- Failure to obtain consent with respect to construction change orders that constituted a material deviation from the approved plans or specifications, including, but not limited to, modifying apartment layouts and ceiling heights and upgrading apartment fixtures and features;

- Failure to obtain consent for individual disbursements in excess of $5,000 in connection with the Development Project;

- Failure to provide quarterly reports and/or monthly reports concerning the progress and costs associated with the Development Project;

- Failure to obtain consent for the establishment of a bonus incentive program;

- Failure to file the 4th amendment to the condominium offering plan within a reasonable time period;

- Failure to obtain consent for the increase of its base fee in connection with the construction of the four additional floors; and

- Failure to conduct a proper analysis of the air rights and 421(a) tax abatement certificates required in connection with the construction of the four additional floors.

### E.      The First Theft of Funds by Falke and Gemignani

46.      In the course of the Development Project, East 29th Street opened the East 29th Street Account to accommodate certain contractors who would insist on being paid every 15 days rather than the normal schedule of every 30 days.

47.      As it turned out, the funds in the East 29th Street Account were never utilized by East 29th Street nor Espais and sat idle in the account.

48.      Falke and Gemignani, however, helped themselves to such funds.

49.     In addition to failing to perform his duties under the Development Management Agreement, on or about May 18, 2007, Falke made an entirely unauthorized withdrawal of funds in the amount of $420,000 from the East 29th Street Account.

50.     On September 7, 2007, Falke made yet another unauthorized withdrawal of funds from the East 29th Street Account in the amount of $1,070,000.

51.     These funds were transferred by Falke to his own personal account with Merrill Lynch.

52.     For many months, East 29th Street and Espais demanded the return of the funds, but Falke stalled and then refused.

### i. Falke's Admission of Wrongdoing

53.     After repeated demands by Espais to return the unauthorized fund withdrawals, on or about January 15, 2008 Falke finally returned $1,527,220 (the amount stolen, plus interest) to the East 29th Street Account and admitted his wrongdoing in making the unauthorized withdrawals, stating in an e-mail entitled "SORRY" to Lluis Casamitjana, an officer at Espais:

> I will have the money Monday put into the East 29th Street account and from there we can have it wired to whatever account you instruct us to wire it to.  Both Mark and I am VERY SORRY for any trouble this has caused you…[w]e made a VERY BAD CHOICE and I hope that you can forgive us. See Ex. A.

(Emphasis in original).

### ii. Falke's Authorization to East 29th Street Account Revoked

54.     Falke's unauthorized withdrawals together with Arcon's material breaches of the Development Management Agreement irreparably destroyed Espais' relationship with Arcon, and Falke in particular, as such relationships were built upon a purported mutual trust between the parties.

55.     As a result of Falke's egregious actions, on or about January 10, 2008 Rafael De Gispert ("De Gispert"), acting on behalf of Espais and East 29th, Street notified Wachovia in writing that Falke's prior authority to make withdrawals from the East 29th Street Account was revoked.

**F.      The Second Theft of Funds by Falke**

56.     In the morning of January 16, 2008, De Gispert and Ricard San Jose Sorroche ("Sorroche"), on behalf of East 29th Street, went to Wachovia's Miami, FL branch where the East 29th Street Account was located, to confirm that Falke's authority over this account had been revoked.

57.     Approximately two hours thereafter, Falke sent an email to De Gispert stating that he had taken his "fees due" in the amount of $218,750 from the East 29th Street Account.

58.     While at the Wachovia Miami branch, De Gispert and Sorroche learned that Falke had made an unauthorized funds transfer request from the East 29th Street account in the amount of $218,750.  Upon the direct in-person request of De Gispert and Sorroche to Jorge Aguirre, the Relationship Manager at Wachovia's International Private Advisory Group, this unauthorized funds transfer was stopped.

**G.      Espais' Termination of the Development Management Agreement**

59.     After another, in a long line of inexcusable transgressions by Falke, Espais and East 29th Street were left with no option but to immediately sever the relationship with Arcon as they could simply not continue to place trust in a development manager who, in addition to materially breaching its duties under the Development Management Agreement, repeatedly defalcated Espais' and East 29th Street's funds.

60.     Espais' representatives thereafter met with Falke and informed him that Espais

was terminating the Development Management Agreement (the termination was subsequently memorialized in a January 18, 2008 letter to Arcon).

**H.    Commingling of Funds by Falke and Gemignani**

61.    Incredibly, only hours after Espais terminated the Development Management Agreement, Falke once again requested an unauthorized funds transfer in the amount of $218,750 from the East 29th Street Account.

62.    Notwithstanding the prior written notification and Espais' in-person instructions, Wachovia permitted the funds transfer to go through, and such funds were transferred to Falke's personal account at Wachovia.

63.    On or about January 17, 2008, Falke made a further unauthorized transfer of $218,750 from his own personal account to that of his partner Gemignani.

64.    On January 23, 2008, Gemignani, in turn, made an unauthorized wire transfer from his personal account to a Wachovia personal account maintained by Jill Falke, Falke's estranged spouse, in the amount of $48,915.

65.    Later that day, an unauthorized wire transfer in the amount of $65,835 was made from Gemignani's personal account back to Falke's personal account, and thereby completed the circle of commingling funds contained in the East 29th Street Account between Falke and Gemignani.

**I.    Alter Ego Status**

66.    Falke and Gemignani are the sole principals of Arcon, with complete dominion and control over Arcon.

67.    Upon information and belief, Arcon is the alter ego of the Individual Counterclaim Defendants and the unlawful acts of Arcon as set forth in the Counterclaims are

also the unlawful acts of the Individual Counterclaim Defendants in that there is such a unity of interest and ownership between Individual Counterclaim Defendants on the one hand, and Arcon on the other hand, that the individuality of Arcon or its separateness from the Individual Counterclaim Defendants has ceased, because upon information and belief:

- In their roles as principals of Arcon, Falke and Gemignani used the East 29th Street Account as their own "personal piggybank," repeatedly defalcating such funds for their personal use;

- Arcon was at all times material to this matter a corporate instrumentality that was used for the benefit of the Individual Counterclaim Defendants to promote their unauthorized use of funds in the East 29th Street Account;

- Arcon is completely influenced and governed by the Individual Counterclaim Defendants;

- The Individual Counterclaim Defendants completely control Arcon;

- Arcon is undercapitalized for the reasonable needs of its business; and

- The corporate form, entity and structure of Arcon was at all times disregarded by the Individual Counterclaim Defendants.

68.    Adherence to the fiction of the separate existence of Arcon as a limited liability company would sanction Individual Counterclaim Defendants' acts of wrongdoing and promote injustice in that the Individual Counterclaim Defendants would be able to escape liability for the breaches of contract, breaches of fiduciary duty, conversion of East 29th Street's funds and other unlawful activity set forth in the Counterclaims, and thus would allow the Individual Counterclaim Defendants to hide behind Arcon and manipulate Espais' and East 29th Street's assets in order to avoid responsibility for such unlawful acts that they individually and for their own benefit directed and caused.

## AS AND FOR THE FIRST COUNTERCLAIM

### (Breach of Contract Against All Counterclaim Defendants)

69.    Counterclaimants repeat and reallege the allegations contained in paragraphs 1 through 68 above, as though set forth fully herein.

70.    The Development Management Agreement is a valid contract entered into between Espais and Arcon on or about August 1, 2006.

71.    Espais and East 29th Street performed all of their responsibilities and duties under the Development Management Agreement.

72.    By its acts and conduct, Arcon violated the terms of the Development Management Agreement by failing to use its best efforts to perform numerous services and functions, including, but not limited to, Arcon's: (1) execution of a construction contract with Gotham that contemplated an addendum that contained open line-item prices for various construction tasks, which subjected Espais and East 29th Street to dramatic price fluctuations for construction costs in connection with the Development Project; (2) failure to substantially develop an accurate Development Project budget for the additional four floors of the Building; (3) failure to monitor the costs associated with the construction of the additional four floors of the Building and utilize its best efforts to identify any variances between actual and budgeted or estimated items; (4) failure to timely report budget overages in connection with the construction of the additional four floors of the Building and not making recommendations to eliminate or reduce such overages; (5) failure to obtain consent with respect to construction change orders that constituted a material deviation from the approved plans or specifications, including, but not limited to, modifying apartment layouts and ceiling heights and upgrading apartment fixtures and features; (6) failure to obtain consent for individual disbursements in excess of $5,000 in

connection with the Development Project; (7) failure to provide quarterly reports and/or monthly reports concerning the progress and costs associated with the Development Project; (8) failure to obtain consent for the establishment of a bonus incentive program; (9) failure to file the 4th amendment to the condominium offering plan within a reasonable time period; (10) failure to obtain consent for the increase of its base fee in connection with the construction of the four additional floors; and (11) failure to conduct a proper analysis of the air rights and 421(a) tax abatement certificates required in connection with the construction of the four additional floors.

73.    Arcon's conduct in connection with the construction of the four additional floors and its theft of funds constitute gross negligence and willful misconduct.

74.    As a result of Arcon's gross negligence and willful misconduct, Arcon, is liable for punitive damages.

75.    As a consequence of the foregoing, Espais and East 29th Street have been damaged in an amount to be determined at trial, but in no event less than $10,000,000 plus punitive and exemplary damages and interest.

## AS FOR THE SECOND COUNTERCLAIM

### (Breach of Fiduciary Duty Against All Counterclaim Defendants)

76.    Counterclaimants repeat and reallege the allegations contained in paragraphs 1 through 75 above, as though set forth fully herein.

77.    In ultimately deciding to utilize Arcon in connection with the Development Project, East 29th Street and Espais relied upon Arcon's representation that they had over 45 years of combined experience in the commercial real estate and construction industry together with an in-depth knowledge and understanding of the New York marketplace.

78.    The parties thereafter entered into the Development Management Agreement,

pursuant to which Espais entrusted Arcon to truly lead the Development Project while Espais

monitored the development remotely from Spain.

79.    Evidencing the good faith, trust and confidence that it placed in Arcon and its

principals, Falke and Gemignani, to faithfully fulfill its duties under the Development

Management Agreement, East 29th Street, opened the East 29th Street Account, and provided,

inter alia, that Falke, the Chairman and Chief Executive Officer of Arcon, would have authority

to make pre-approved withdrawals from the East 29th Street Account in connection with the

Development Project.

80.    This included all payments to the dozens of vendors on the Development Project.

81.    As a result of the foregoing, the very nature of Arcon's role as the Development

Manager under the Development Management Agreement together with its control over the

project funding gave rise to fiduciary duties to Espais and East 29th Street.

82.    Arcon breached its fiduciary duties to Espais and East 29th Street by, inter alia: (1)

executing a construction contract with Gotham that contemplated an addendum that contained

open line-item prices for various construction tasks, which subjected Espais and East 29th Street

to dramatic price fluctuations for construction costs in connection with the Development Project;

(2) preparing the Arcon Initial Budget based upon limited information and without the benefit of

subcontractor bids and thereby creating a $5,000,000, or 55% cost overrun over its Initial

Budget; (3) failing to regularly monitor the costs associated with the construction of the

additional four floors of the Building and utilize its best efforts to identify any variances between

actual and budgeted or estimated items; (4) failing to timely report budget overages to Espais in

connection with the construction of the additional four floors of the Building and not making

recommendations to eliminate or reduce such overages; (5) failing to obtain consent with respect

to construction change orders that constituted a material deviation from the approved plans or specifications, including, but not limited to, modifying apartment layouts and ceiling heights and upgrading apartment fixtures and features; (6) failing to obtain consent for individual disbursements in excess of $5,000 in connection with the Development Project; (7) failing to provide quarterly reports and/or monthly reports concerning the progress and costs associated with the Development Project; (8) failing to obtain consent for the establishment of a bonus incentive program; (9) failing to file the 4th amendment to the condominium offering plan within a reasonable time period; (10) failing to obtain consent for the increase of its base fee in connection with the construction of the four additional floors; and (11) failing to conduct a proper analysis of the air rights and 421(a) tax abatement certificates required in connection with the construction of the four additional floors.

83.     Arcon, Falke and Gemigiani also breached their fiduciary duties by stealing monies from the East 29th Street accounts as described herein.

84.     As a consequence of the foregoing, Arcon, Falke and Gemigiani are liable to East 29th Street and Espais in an amount to be determined at trial, but in no event less than 10,0000,000 plus punitive damages, exemplary damages and interest.

## AS FOR THE THIRD COUNTERCLAIM

### (Conversion Against All Counterclaim Defendants)

85.     Counterclaimants repeat and reallege the allegations contained in paragraphs 1 through 84 above, as though set forth fully herein.

86.     As alleged above, in removing $218,750 from the East 29th Street Account and transferring such funds to his personal account, Falke, on behalf of Arcon, exercised unauthorized dominion over the funds in such account, to the exclusion of and in violation of the

rights of Espais and East 29th Street.

87.     As alleged above, by making further unauthorized wire transfers of portions of the East 29th Street funds to the personal accounts of Falke and Jill Falke, Gemignani, on behalf of Arcon, exercised unauthorized dominion over the funds in such account, to the exclusion of and in violation of the rights of Espais and East 29th Street.

88.     Falke's and Gemignani's wrongful conduct constitutes conversion of Espais' and East 29th Street's personal property.

89.     Upon information and belief, Falke's and Gemignani's conduct, on behalf of Arcon, was gross, wanton, willful, fraudulent and/or morally culpable to an extreme degree, and was undertaken intentionally and with callous disregard to Counterclaimants' rights.

90.     Accordingly, Espais and East 29th Street, in addition to their actual damages in an amount to be determined at trial but in no event less than $218,750, the amount wrongfully withdrawn from the account, plus interest, is by reason thereof entitled to recover exemplary and punitive damages against Arcon, Falke and Gemignani in an amount to be determined at trial.

## AS FOR THE FOURTH COUNTERCLAIM

### (Alter Ego Against All Counterclaim Defendants)

91.     Counterclaimants repeat and reallege the allegations contained in paragraphs 1 through 90 above, as though set forth fully herein.

92.     Upon information and belief, Falke and Gemignani are the sole principals of Arcon with complete dominion and control over Arcon.

93.     Upon information and belief, Arcon is the alter ego of the Individual Counterclaim Defendants and the unlawful acts of Arcon as set forth in the Counterclaims are also the unlawful acts of the Individual Counterclaim Defendants in that there is such a unity of

interest and ownership between Individual Counterclaim Defendants on the one hand, and Arcon

on the other hand, that the individuality of Arcon or its separateness from the Individual

Counterclaim Defendants has ceased, because upon information and belief: (1) In their roles as

the sole principals of Arcon, Falke and Gemignani used the East 29th Street Account as their own

"personal piggybank," repeatedly defalcating such funds for their own personal use; (2) Arcon

was at all times material to this matter a corporate instrumentality that was used for the benefit of

the Individual Counterclaim Defendants to commingle the East 29th Street Account funds

between and among their own personal accounts; (3) Arcon is completely influenced and

governed by the Individual Counterclaim Defendants; (4) The Individual Counterclaim

Defendants completely control Arcon; (5) Arcon is undercapitalized for the reasonable needs of

its business; and (6) the corporate form, entity and structure of Arcon was at all times

disregarded by the Individual Counterclaim Defendants.

94.     Adherence to the fiction of the separate existence of Arcon as a limited liability

company would sanction Individual Counterclaim Defendants' acts of wrongdoing and promote

injustice in that the Individual Counterclaim Defendants would be able to escape liability for the

breaches of contract, breaches of fiduciary duty, conversion of East 29th Street's funds and other

unlawful activity set forth in the Counterclaims, and thus would allow the Individual

Counterclaim Defendants to hide behind Arcon and manipulate Espais' and East 29th Street's

assets in order to avoid responsibility for such unlawful acts that they individually and for their

own benefit directed and caused.

95.     As a result of their wrongful acts and conduct, the Court should pierce Arcon's

corporate veil and hold Falke and Gemignani personally liable for Arcon's breach of the

Development Management Agreement, breach of fiduciary duty and conversion of funds in the

East 29th Street Account.

96.      As a consequence of the foregoing, Espais, and East 29th Street, have been damaged in an amount to be determined at trial, plus punitive and exemplary damages.

## AS FOR THE FIFTH COUNTERCLAIM

### (Attorneys Fees/Costs of Suit Against All Counterclaim Defendants)

97.      Counterclaimants repeat and reallege the allegations contained in paragraphs 1 through 96 above, as though set forth fully herein.

98.      Article 11.10 of the Development Management Agreement provides: "[i]n the event of any dispute under this Agreement concerning the meaning or interpretation of any provision of this Agreement, the party not prevailing in such dispute shall pay any and all costs and expenses reasonably incurred by the other party in enforcing or establishing its rights thereunder, including, without limitation, court costs and reasonable attorneys' fees."

99.      As a result of the foregoing, Counterclaim Defendants are liable for all reasonable attorneys' fees and costs of suit incurred by Defendants/Counterclaimants' in this action.

### FIRST AFFIRMATIVE DEFENSE

100.      The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

101.      The Complaint is barred by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

102.      The Complaint is barred by the doctrine of waiver and/or estoppel.

### FOURTH AFFIRMATIVE DEFENSE

103.      The Complaint is barred by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

104.    The Complaint is barred, in whole or in part, because Defendants/Counterclaimants' performance was excused, waived and/or prevented by, among other things, Counterclaim Defendants' breach of the alleged contract and repeated embezzlement or unauthorized transfers of Defendants/Counterclaimants' funds.

## SIXTH AFFIRMATIVE DEFENSE

105.    The Complaint is barred, in whole or in part, by the doctrine of frustration of purpose.

## SEVENTH AFFIRMATIVE DEFENSE

106.    The Complaint is barred, in whole or in part, by Counterclaim Defendants' failure to mitigate damages.

## EIGHTH AFFIRMATIVE DEFENSE

107.    Even assuming, _arguendo_, that Arcon is entitled to damages (to which it is not), any purported damages alleged by Arcon is limited by the liquidated damages provision set forth in the Development Management Agreement.

## NINTH AFFIRMATIVE DEFENSE

108.    Any damages alleged by Arcon resulted from its own acts or omissions.

## TENTH AFFIRMATIVE DEFENSE

109.    Plaintiff/Counterclaim Defendant's unjust enrichment and constructive trust cause of action against East 29th Street (Count V) is barred because it is duplicative of its breach of contract claim and recovery in quasi-contract is precluded when a valid and enforceable contract exists governing events arising out of the same subject matter.

## ELEVENTH AFFIRMATIVE DEFENSE

110.    Plaintiff/Counterclaim Defendant's tortious interference with contract cause of action against Espais (Count VII) is barred because Espais is a party to the Development Management Agreement.

## TWELVETH AFFIRMATIVE DEFENSE

111.    Due to the lack of information as to the matters set forth in the Complaint, Defendants have insufficient knowledge or information by which to form a belief as to whether they have additional, as yet unstated, affirmative defenses available, and therefore reserve the right to assert additional affirmative defenses in the event that discovery indicates that such defenses are proper.

**WHEREFORE**, Counterclaimants demand judgment against Counterclaim Defendants as follows:

A.    Dismissing the Complaint in its entirely;

B.    On the First Counterclaim, for compensatory damages in an amount to be determined at trial, but in no event less than $10,000,000, plus punitive and exemplary damages against all Counterclaim Defendants;

C.    On the Second Counterclaim, for compensatory damages in an amount to be determined at trial, but in no event less than $10,000,000, plus punitive and exemplary damages against all Counterclaim Defendants;

D.    On the Third Counterclaim, for compensatory damages against all Counterclaim Defendants in an amount to be determined at trial, but no less than $218,750, plus interest, and exemplary and punitive damages;

E.    On the Fourth Counterclaim, for compensatory, punitive and exemplary damages

against Falke and Gemignani in an amount to be determined at trial;

      F.      On the Fifth Counterclaim, for reasonable attorneys' fees and costs of suit

incurred by Defendants/Counterclaimants in this action.

      G.      For interest, at the maximum statutory rate, on all sums awarded;

      H.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Counterclaimants demand trial by jury on all issues so triable.

Dated: New York, New York
       April 23, 2008

PRYOR CASHMAN LLP

By: _____
    Todd E. Soloway
    tsoloway@pryorcashman.com
    Jonathan Shepard
    jshepard@pryorcashman.com
    410 Park Avenue, 10th Floor
    New York, New York 10022
    Tel: (212) 421-4100
    Fax: (212) 326-0806

Attorneys for Defendants/Counterclaimants

# EXHIBIT
# A

**De:**              Michael Falke [mfalke@arconsolutions.com]
**Enviado el:**      viernes, 11 de enero de 2008 22:49
**Para:**            Casamitjana, Lluis
**Asunto:**          SORRY


Lluis, I will have the money Monday put into the East 29th Street account and from there we can have it wired to whatever account you instruct us to wire it to. Both Mark and I am VERY SORRY for any trouble that this has caused you. As you can imagine we have not taken this lightly. Both Mark and I have given YOU AND ESPAIS 100% attention. We have worked hard to assemble a great team and to push this project to the limits both construction and sales. If you recall I have done everything possible to help I opened an account for Espais to get started in the USA I signed personally on the lease because it required a personal guarantee from a United States citizen and I have fought for the project with the seller, the attorneys and all of the vendors to get the best possible deal. Both Mark and I have helped give Espais a Great name in the NYC market and when Espais was not making payments on time or signing documents on time We have taken the brunt of all of this while NEVER saying a bad thing about your company.

We made a VERY BAD CHOICE and I hope that you can forgive us and especially me since of the relationship that you and I went into this venture in and that we can work to re-build the trust needed to finish this job together.

From the bottom of my heart,
Mike