Todd E. Soloway
tsoloway@pryorcashman.com
Jonathan T. Shepard
jshepard@pryorcashman.com
PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022
Tel: (212) 421-4100
Fax: (212) 326-0806

Attorneys for Defendants/Counterclaimants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

ARCON SOLUTIONS, LLC,

      Plaintiff/Counterclaim Defendant,

vs.

EAST 29TH STREET, LLC and ESPAIS PROMOCIONS IMMOBILIARIES EPI, S.A.,

      Defendants/Counterclaimants,

vs.

MICHAEL FALKE and MARK GEMIGNANI,

      Additional Counterclaim Defendants.
------------------------------X

Case No. 08 CV 02050 (RMB)

**MEMORANDUM OF LAW IN OPPOSITION TO ADDITIONAL COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS**

Defendants/Counterclaimants East 29th Street, LLC ("East 29th Street") and Espais Promocions Immobiliaries EPI, S.A. ("Espais" and, collectively with East 29th Street, "Counterclaimants") respectfully submit this memorandum of law in opposition to Michael Falke's ("Falke") and Mark Gemignani's ("Gemignani" and, collectively with Falke, "Additional Counterclaim Defendants") motion to dismiss counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I. PRELIMINARY STATEMENT ................................................................................. 2

II. STATEMENT OF FACTS .......................................................................................... 2

    A. Development of Relationship of Mutual Trust Between the Parties .................. 2

        i. East 29th Street Granted Falke and Gemignani Substantial Control over the Development and Construction of a New York City Building .................... 2

        ii. East 29th Street Granted Falke Access to its Business Checking Account ................ 3

    B. The First Theft of Funds by Falke and Gemignani And their Admission of Wrongdoing ................................................................. 4

    C. The Second Theft of Funds by Falke and Gemignani ........................................ 4

    D. This Court has Personal Jurisdiction over Falke and Gemignani ....................... 5

        i. This Court has Personal Jurisdiction under CPLR 302(a)(1) ..................... 5

        ii. This Court has Personal Jurisdiction under CPLR 302(a)(3) .................... 6

    E. Counterclaimants have Sufficiently Plead an Alter Ego Claim ......................... 6

III. ARGUMENT ................................................................................................................ 6

    A. This Court Has Personal Jurisdiction over Falke and Gemignani under CPLR 302(a)(1) ................................................................. 6

        i. Falke and Gemignani Transacted Business in New York ........................... 7

        ii. Falke and Gemignani Contracted to Supply Services in New York ........... 8

        iii. Arcon was Merely a Shell Corporation ...................................................... 9

    B. This Court has Personal Jurisdiction over Falke and Gemignani under CPLR 302(a)(3) ................................................................. 11

    C. An Alter-Ego Cause of Action Against Falke and Gemignani has been Adequately Plead ................................................................. 12

IV. CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**                                                                                                **PAGE(s)**

Alpha International v. T-Reproductions,
    No. 02 Civ. 9586 SAS, 2003 WL. 21511957 (S.D.N.Y. July 1, 2003) ............................ 7, 9

Fletcher v. Atex, Inc.,
    68 F.3d 1451 (2d Cir. 1995) ............................................................................................... 9

Futch v. Head,
    511 So. 2d 314 (Fla. Dist. Ct. App., 1st Dist. 1987) ........................................................ 13

Impulse Marketing Group, Inc. v. National Small Bus. Alliance, Inc.,
    2007 U.S. Dist. LEXIS 42725 (S.D.N.Y. June 11, 2007) ................................................... 9

Kreutter v. McFadden Oil Corp.,
    71 N.Y.2d 460, 522 N.E.2d 40 (1988) .............................................................................. 7

Manning v. Utilities Mutual Insurance Co., Inc.,
    254 F.3d 387 (2d Cir. 2001) ............................................................................................. 13

Marine Midland Bank v. Miller,
    664 F.2d 899 (2d Cir. 1981) ............................................................................................. 10

Mayatextil v. Liztex U.S.A., Inc.,
    No. 92 Civ. 4528 (SS), 1995 WL. 131774 (S.D.N.Y. Mar. 23, 1995) ........................... 9, 12

Miramax Film v. Abraham,
    No. 01 CV 5203 (GBD), 2003 WL. 22832384 (S.D.N.Y. Nov. 25, 2003) ....................... 10

Purdue Pharma L.P. v. Impax Laboratories, Inc.,
    No. 02 Civ. 2803, 2003 WL. 22070549 (S.D.N.Y. 2003) ................................................ 11

Raber v. Osprey Alaska,
    187 F.R.D. 675 (M.D. Fla. 1999) ............................................................................... 12-13

Regency Capital v. Corpfinance Intern,
    No. 02 Civ. 5616 (KTD), 2003 WL. 22400200 (S.D.N.Y. 2003) ...................................... 8

Shanghai Join Buy Co. v. PSTEX Group, Inc.,
    No. 05 Civ. 3766 (NRB), 2006 WL. 2322648 (S.D.N.Y. Aug. 10, 2006) ........................ 12

Time, Inc. v. Simpson,
    2003 U.S. Dist. LEXIS 23061 (S.D.N.Y. Dec. 22, 2003) .................................................. 9

**CASES**                                                                                                               **PAGE(s)**

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,
  751 F.2d 117 (2d Cir. 1984) ........................................................................................9, 10

**STATUTES**

Fed. R. Civ. P. 12(b)(2) ..................................................................................................1

Fed. R. Civ. P. 12(b)(6) ..................................................................................................1

Fed. R. Civ. P. 15(a)(1) ................................................................................................13

CPLR § 302(a)(1) .......................................................................................................5, 6

CPLR § 302(a)(3) ...................................................................................................6, 11, 12

I.  **PRELIMINARY STATEMENT**

Relying upon an erroneous legal standard, Falke and Gemignani claim this Court lacks personal jurisdiction over them. They present this contorted jurisdictional challenge even though they have admitted in writing to utilizing their positions as the sole members of plaintiff/counterclaim defendant Arcon Solutions, LLC ("Arcon"), a corporate shell over which Falke and Gemignani concede this Court has personal jurisdiction, to abscond with money from the bank account of East 29th Street, the owner of a $162 million New York City development project. Independent of these particular acts, Falke and Gemignani regularly conducted business in New York.

As set forth below and in the accompanying declaration, as a matter of law and fact, this Court undoubtedly has personal jurisdiction over Falke and Gemignani.

II.  **STATEMENT OF FACTS**

    A.  **Development of Relationship of Mutual Trust Between the Parties**

        i) **East 29th Street Granted Falke and Gemignani Substantial Control over the Development and Construction of a New York City Building**

East 29th Street desired to construct a first class residential condominium building on a parcel of property located at 39-45 East 29th Street, New York, New York, which it had acquired on or about September 29, 2006 (the "Building"). See Declaration of Rafael De Gispert, dated July 15, 2008 (the "De Gispert Declaration"), ¶ 2. The principals of East 29th Street who are based in Barcelona, Spain and are experienced real estate developers, would have employed their own development company, Espais, to run the project including all aspects of pre-construction, construction and sales. Id. However, Espais and the principals of East 29th Street had not previously been involved in a real estate development project in New York City and thus determined that they needed to retain a real estate development management company based in

the United States to serve as the development manager in connection with the $162,000,000 construction project. Id., ¶ 3.

Thereafter, Espais engaged in discussions with Arcon, and specifically Falke and Gemignani, to serve as the development manager for the project. On or about August 1, 2006, in reliance on Falke's and Gemignani's extensive self-represented experience as project development managers, Espais and Arcon entered into a development management agreement (the "Development Management Agreement"), which specifies that New York shall be both the governing law and the place of venue for any disputes arising thereunder. Id., ¶ 5. This was and is entirely appropriate given that the project is located in Manhattan. Under the agreement, Espais entrusted Arcon to coordinate the acquisition, development and construction of the Building and the marketing and sales of the residential units (the "Development Project"), while Espais monitored the development remotely from Spain. Id.

As the sole principals of Arcon, Falke and Gemignani acted as the development managers and controlled all aspects of the New York Development Project, including, without limitation, procuring contractors, preparing cost forecasts, paying all the vendors on the project, overseeing the process of submitting cost requisition statements to the construction lender, developing and managing project budgets and marketing the residential units in the Building. See De Gispert Declaration, ¶ 6.

### ii) East 29th Street Granted Falke Access to its Business Checking Account

As evidence of the trust that East 29th Street placed in Falke and Gemignani to faithfully discharge their duties as development managers in connection with the Development Project, East 29th Street opened a business checking account (the "East 29th Street Account") with Wachovia Bank, N.A. ("Wachovia") and gave Falke, the Managing Member of Arcon, authority

to make pre-approved withdrawals from such account in order to pay contractors who insisted on being paid every 15 days rather than the normal schedule of every 30 days. Id., ¶ 8.

### B. The First Theft of Funds by Falke and Gemignani and their Admission of Wrongdoing

In betrayal of East 29th Street's trust, Falke and Gemignani, by virtue of their roles as the sole principals of Arcon, gained access and helped themselves to the funds in the East 29th Street Account on multiple occasions. On or about May 18, 2007 and September 7, 2007, Falke made unauthorized transfers of funds in the amounts of $420,000 and $1,070,000 respectively from the East 29th Street Account to his own personal account. Id., ¶ 9 and Ex. A annexed thereto. After failing to respond to East 29th Street's repeated demands to return the unauthorized fund withdrawals for months, Falke and Gemignani finally returned $1,527,220 (the amount wrongfully taken, plus interest) to the East 29th Street Account on or about January 15, 2008 and admitted their wrongdoing in utilizing the account as their "personal piggybank," stating in an e-mail entitled "SORRY" to Lluis Casamitjana, an officer at Espais:

> I will have the money Monday put into the East 29th Street account and from there we can have it wired to whatever account you instruct us to wire it to. Both Mark and I am VERY SORRY for any trouble this has caused you...[w]e made a VERY BAD CHOICE and I hope that you can forgive us. (Emphasis in original).

(Id., ¶ 10 and Ex. B annexed thereto).

### C. The Second Theft of Funds by Falke and Gemignani

Only a few days after this blatant admission of wrongdoing by Falke and Gemignani, Falke once again stole funds from the East 29th Street Account in the amount of $218,750 and transferred them to his personal account after East 29th Street explicitly revoked his authority to access the East 29th Street Account. Id., ¶¶ 16-17 and Ex. F annexed thereto. Falke then transferred such funds from his own personal account to that of Gemignani, who, in turn, made

an unauthorized wire transfer from his personal account to a personal account maintained by Jill Falke, Falke's estranged spouse, in the amount of $48,915. See De Gispert Declaration, ¶ 18 and Exs. G, H annexed thereto. The only explanation for these post-theft transfers was to somehow hide the stolen funds from East 29th Street and Espais. Thereafter, a wire transfer in the amount of $65,835 was made from Gemignani's personal account back to Falke's personal account, and thereby completed the circle of commingling funds contained in the East 29th Street Account between and among Falke and Gemignani. Id., ¶ 18 and Ex. I annexed thereto. As the record will show, the thefts are merely examples of the egregious conduct of Arcon and its principals in connection with this Development Project that is located in the heart of New York City. There is no doubt that this Court has personal jurisdiction over Falke and Gemignani.

**D.     This Court has Personal Jurisdiction over Falke and Gemignani**

**i) This Court has Personal Jurisdiction under CPLR 302(a)(1)**

New York's long-arm statute confers this Court with personal jurisdiction over Falke and Gemignani under CPLR § 302(a)(1). It is without question that Falke and Gemignani "transacted" business in the State of New York within the guidelines of this statutory provision because they exercised complete control over the development and construction of a New York City Building which is the source of all claims and counterclaims in this action. In addition, Falke and Gemignani, on behalf of Arcon, entered into an agreement to supply development management services in New York by entering into the Development Management Agreement. By that agreement, they were required to manage a New York City Development Project, including making numerous site visits to New York (for which they were reimbursed by East 29th Street) in order to personally monitor and coordinate with the professionals associated with

the project. Id., ¶¶ 5-7. During such visits Falke and Gemignani actually worked out of East 29th Street's sales office located on 33rd Street in Manhattan. Id. ¶ 7.

### ii) This Court has Personal Jurisdiction under CPLR 302(a)(3)

New York's long-arm statute also confers this Court with personal jurisdiction over Falke and Gemignani under CPLR § 302(a)(3). As referenced above, Falke and Gemignani plainly admitted their wrongdoing in absconding with funds from the East 29th Street Account which undoubtedly had a "substantial effect" on the Project under the guidelines of this statutory provision. By virtue of Falke's and Gemignani's wrongful acts, East 29th Street and Espais were literally deprived of nearly $2,000,000 that would have been otherwise used to advance the development and construction of the Building.

### E.  Counterclaimants have Sufficiently Plead an Alter Ego Claim

Counterclaimants have stated an alter ego cause of action in that Falke and Gemignani, the sole principals of Arcon, gained access to the East 29th Street Account by virtue of their respective positions within the company. Utilizing the Arcon corporate instrumentality, Falke and Gemignani repeatedly stole nearly $2,000,000 in funds from the East 29th Street Account and transferred such funds between and among their own personal accounts to the detriment of the Development Project.

## III. ARGUMENT

### A.  This Court Has Personal Jurisdiction over Falke and Gemignani under CPLR 302(a)(1)

This Court has long-arm jurisdiction over Falke and Gemignani because these individuals unquestionably transacted business and contracted to supply services in the State of New York in that they entered into an agreement pursuant to which they were to serve as development

managers in connection with the development and construction of a New York City Building. The relevant portion of CPLR § 302 states:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state

### i) Falke and Gemignani Transacted Business in New York

New York's long-arm statute is a "single act statute," and thus proof of even a <u>single</u> transaction in New York is sufficient to confer jurisdiction even when the defendant has never entered the State of New York. Alpha Int'l v. T-Reproductions, No. 02 Civ. 9586 SAS, 2003 WL 21511957, at 2 (S.D.N.Y. July 1, 2003). It is well-settled that "[j]urisdiction extends to the employees of a corporation who had knowledge of, and extensive control over, the New York transaction that is the source of the litigation." Id. at *3; see also Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 522 N.E.2d 40 (1988). New York courts have explicitly rejected the "Fiduciary Shield Doctrine" as it does not comport with notions of fairness nor is it desirable as a matter of public policy. See Kreutter, 71 N.Y.2d at 470-71, 522 N.E.2d at 40.

In Alpha, the court held that it had jurisdiction over a defendant corporate officer because he was the head officer of the defendant corporation and "clearly knew of and exerted substantial control over the New York transactions" because he personally authorized a direct mailer of an advertisement to New York customers that infringed upon plaintiff's trademark. Alpha Int'l, 2003 WL 21511957, at *3.

Similar to the corporate officer in Alpha, Falke and Gemignani had knowledge of and exerted substantial control over the New York Development Project that forms the basis of all

claims and counterclaims in this action. East 29th Street retained Arcon to serve as its development manager in connection with the construction of a New York City Building, and Falke and Gemignani, as the sole principals of Arcon, had knowledge and total control over all aspects of the acquisition, construction and development of the Building, including, inter alia, procuring contractors, preparing cost forecasts, paying all the vendors on the project, overseeing the process of submitting cost requisition statements to the construction lender, developing and managing project budgets and marketing the residential units in the Building. See De Gispert Declaration, ¶ 6. These duties undertaken by Falke and Gemignani in their roles as development managers for the New York Development Project far surpass the requirement of proving a mere "single-act" in New York in order to confer jurisdiction under CPLR § 302(a)(1).

### ii) Falke and Gemignani Contracted to Supply Services in New York

Additionally, this Court has jurisdiction over Falke and Gemignani under CPLR 302(a)(1) because Falke and Gemignani entered into a contract "to supply goods or services in the [New York]." Regency Capital v. Corpfinance Intern, No. 02 Civ. 5616 (KTD), 2003 WL 22400200, at *2-3 (S.D.N.Y. 2003). Falke, on behalf of Arcon, was a signatory to the Development Management Agreement, an agreement executed in New York and pursuant to which all duties and obligations were to be performed in New York. This agreement required them to manage a New York City Development Project, including, without limitation, making numerous site visits to New York (for which they were reimbursed by East 29th Street) in order to personally monitor and coordinate with the professionals associated with the project. See De Gispert Declaration, ¶¶ 6-7. During such visits Falke and Gemignani actually worked out of East 29th Street's sales office located on 33rd Street in Manhattan. Id., ¶ 7.

The fact that Falke and Gemignani entered into the Development Agreement on behalf of Arcon does not extricate them from a finding that this Court has personal jurisdiction over them. In fact, the New York Court of Appeals has found that <u>nothing</u> in CPLR 302 or the legislative history associated with it would suggest that the Legislature "intended to accord any special treatment to fiduciaries acting on behalf of a corporation or to insulate them from long-arm jurisdiction for acts performed in a corporate capacity." <u>Mayatextil v. Liztex U.S.A., Inc.</u>, No. 92 Civ. 4528 (SS), 1995 WL 131774, at * 7 (S.D.N.Y. Mar. 23, 1995). Accordingly, this Court can also assert personal jurisdiction over Falke and Gemignani based on the fact that they entered into the Development Management Agreement in New York.

### iii) Arcon was Merely a Shell Corporation

Although this Court has personal jurisdiction over Falke and Gemignani pursuant to CPLR 302(a)(1), courts also have the ability to acquire personal jurisdiction over corporate representatives by piercing the corporate veil.

Contrary to Falke's and Gemignani's erroneous assertions, New York law governs the "piercing" analysis for purposes of conferring jurisdiction because courts look to the law of the forum state to determine personal jurisdiction. <u>Alpha Int'l</u>, 2003 WL 21511957 at 2; <u>see also</u> <u>Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.</u>, 751 F.2d 117, 120 (2d Cir. 1984).[1]

---

[1] Falke and Gemignani mistakenly assert that Florida law applies in any alter ego analysis. <u>See</u> Memorandum of Law in Support of Counter-Defendants Falke and Gemignani's Motion to Dismiss Counterclaims, dated June 23, 2008 (the "Motion") at 6. Although Florida law applies when analyzing whether a claim for piercing the corporate veil exists, <u>New York law</u> governs the analysis for purposes of determining whether this Court has personal jurisdiction over Falke and Gemignani. The cases cited by Falke and Gemignani merely reiterate the accepted standard that courts look to the forum state's choice of law provisions to determine the applicable <u>substantive law</u>. <u>See</u> <u>Fletcher v. Atex, Inc.</u> 68 F.3d 1451, 1456 (2d Cir. 1995); <u>Impulse Mktg. Group, Inc. v. National Small Bus. Alliance, Inc.</u>, 2007 U.S. Dist. LEXIS 42725 (S.D.N.Y. June 11, 2007); <u>Time, Inc. v. Simpson</u>, 2003 U.S. Dist. LEXIS 23061 (S.D.N.Y. Dec. 22, 2003).

Under New York law, "[t]he standard utilized for piercing the corporate veil for the purposes of conferring jurisdiction is far less stringent [than the standard used to determine liability]."[2] Miramax Film v. Abraham, No. 01 CV 5203 (GBD), 2003 WL 22832384 at *7 (S.D.N.Y. Nov. 25, 2003); Marine Midland Bank v. Miller, 664 F.2d 899, 903 (2d Cir. 1981). If a corporation is merely a shell, the corporate veil may be pierced to impute jurisdiction even without a showing that the shell was used for improper purposes. Miramax, 2003 WL 22832384 at * 7; Marine Midland, 664 F.2d at 903 (holding that if a corporation is merely a shell, its owner may be subjected "to the court's jurisdiction to defend the acts he has done on behalf of his shell.") "The critical inquiry [in] determining whether a corporation is a shell company is whether it is being used by the alleged dominating entity [or individual] to advance its own personal interests as oppose[d] to furthering the corporate ends." Miramax, 2003 WL 22832384 at *8. "Under New York law, courts will pierce the corporate veil to assert jurisdiction when the activities of the owner show a disregard for the separate corporate existence of the corporation." Id. at 7 (quoting Volkswagenwerk, 751 F.2d at 120).

Here, Arcon was a mere corporate instrumentality, over which Falke and Gemignani concede that this Court has personal jurisdiction, through which they, as its sole principals, completely influenced its actions and utilized it to significantly advance their own personal interests. Moreover, although not necessary to show for purposes of conferring personal jurisdiction, Falke and Gemignani utilized the Arcon corporate shell to perpetuate numerous unlawful acts, including, without limitation, gaining access to and stealing nearly $2,000,000 in funds from the East 29th Street Account and commingling such funds between and among their personal bank accounts for their own personal benefit and to the detriment of the Development

---

[2] East 29th Street and Espais have also plead the requisite facts necessary to state a cause of action for piercing the corporate veil, which is discussed more fully in Section II(C) below.

Project. The only explanation for these post-theft transfers was to somehow hide the stolen East 29th Street funds. These facts clearly demonstrate that this Court has personal jurisdiction over Falke and Gemignani by piercing the corporate veil.[3]

### B. This Court has Personal Jurisdiction over Falke and Gemignani under CPLR 302(a)(3)

In addition to the foregoing, this Court has long-arm jurisdiction over Falke and Gemignani because they committed tortious acts in the State of Florida that injured a New York entity together with property in the State of New York. CPLR § 302(a)(3) provides that a New York court may exercise personal jurisdiction over a non-domiciliary who:

> Commits a tortious act without the state causing injury to person or property within the state, except as to cause of action for defamation of character arising from the act, if he:
>
> i.    regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> ii.    expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Falke and Gemignani committed the tort of conversion in Florida which had a substantial effect on the New York Development Project. Falke's and Gemignani's defalcation of funds from the East 29th Street Account based in Miami, FL (to which Falke admitted) were clear acts of conversion that were committed in Florida that directly impacted East 29th St., a New York

---

[3] Falke and Gemignani contend in the Motion that East 29th Street and Espais must initiate an action in the State of Florida in order to obtain personal jurisdiction. See Motion, at 10. Notwithstanding the fact that East 29th Street and Espais have established that this Court has personal jurisdiction over Falke and Gemignani in New York, it would be a waste of judicial resources to initiate a separate action against these individual defendants in Florida when this action, involving the exact same agreement and transactions performed pursuant to that agreement in New York, is pending in this Court. See Purdue Pharma L.P. v. Impax Laboratories, Inc., No. 02 Civ. 2803, 2003 WL 22070549, at *4 (S.D.N.Y. 2003).

744526

11

entity, as well as the development and construction of a New York City Building. East 29th Street literally lost the use of nearly $2,000,000 that they could have otherwise used to further advance the development of the New York Development Project. Falke and Gemignani knew or should have reasonably known that their theft of such funds would have a direct impact on the Development Project. Furthermore, Falke and Gemignani derived substantial revenue for their work on the project as they were paid substantial fees by East 29th Street and Espais in connection therewith. Thus, all elements of CPLR § 302(a)(3) are satisfied and the Court has jurisdiction over Falke and Gemignani as a result.[4]

### C. An Alter-Ego Cause of Action Against Falke and Gemignani has been Adequately Plead

Contrary to Falke and Gemignani's baseless assertions, Counterclaimants have clearly plead an alter-ego cause of action against Falke and Gemignani. New York choice-of-law principles dictate that the law of the state of incorporation determines whether to pierce the corporate veil for purposes of establishing liability. See Shanghai Join Buy Co. v. PSTEX Group, Inc., No. 05 Civ. 3766 (NRB), 2006 WL 2322648, at *FN 19, (S.D.N.Y. Aug. 10, 2006).

Since Arcon is a Florida limited liability company, Florida law applies and dictates that the corporate veil will be pierced under an alter ego cause of action when the corporation is an "instrumentality" of the individual and where there is "improper conduct." See e.g. Raber v.

---

[4] Falke and Gemignani contend in the Motion that this Court lacks personal jurisdiction over them pursuant to CPLR § 302(a)(3) because they did not conduct any business in New York in their individual capacity. See Motion, at 12. This argument is without merit. Not only have the courts in New York rejected this "fiduciary shield doctrine," under which individuals may claim that they are insulted from jurisdiction if they acted in their capacity as a corporate fiduciary, but there has always been an exception to that doctrine under which "individuals who personally benefit from the 'corporate' acts because the corporation is a mere shell for the individual's activities" are subject to personal jurisdiction. Mayatextil, 1995 WL 131774, at * 7. Here, where Falke and Gemignani personally benefited from their "corporate" acts, they can be subject to personal jurisdiction in New York based upon their actions as representatives of Arcon.

Osprey Alaska, 187 F.R.D. 675, 679 (M.D. Fla. 1999); Futch v. Head, 511 So. 2d 314 (Fla. Dist. Ct. App., 1st Dist. 1987).

In Raber, the Plaintiffs alleged that the Defendants fraudulently removed funds from the corporate entity after the date upon which Plaintiffs purchased the corporate entity. 187 F.R.D. at 678. The Court held that the Plaintiffs had alleged sufficient facts supporting the allegation that the corporate veil should be pierced. Id. at 679. Plaintiffs stated a claim for piercing the corporate veil because the corporation was an instrumentality of the defendants and that the defendants engaged in improper conduct including, inter alia, commingling funds of the corporation with personal funds and funds of other corporations, using the assets of the corporation for their personal use, and utilizing the corporate form to avoid liability. Id.

Similar to the corporate entity in Raber, Arcon is a mere corporate instrumentality that is completely controlled and influenced by Falke and Gemignani, its sole principals. As discussed above, Falke and Gemignani, by virtue of their roles as sole principals of Arcon, defalcated nearly $2,000,000 from the East 29th Street Account and commingled such funds between and among their personal accounts for their own personal use. See De Gispert Declaration, ¶¶ 9-20.

Falke and Gemignani's conduct significantly damaged Espais and East 29th Street in that they literally lost the use of nearly $2,000,000 as a result of Falke's and Gemignani's deceit and thievery that would have otherwise been used to advance the Development Project. These facts, on their face, clearly demonstrate that Counterclaimants have sufficiently plead an alter ego cause of action.[5]

---

[5] In the event the Court finds that the alter ego claim was not sufficiently pled, Counterclaimants seek leave from this Court to amend their counterclaim. Pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, a party may amend its pleading with the Court's leave. Leave shall be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(1)(B); see also Manning v. Utilities Mutual Insurance Co., Inc., 254 F.3d 387 (2d Cir. 2001). The facts set forth in the alter

744526

13

## IV. CONCLUSION

For all of the foregoing reasons, Counterclaimants Espais and East 29th Street LLC, respectfully request that this Court enter an Order: (i) denying Falke's and Gemignani's Motion to Dismiss Counterclaims in its entirety; and (ii) granting such other and further relief as this Court deems just and proper.

Dated: July 16, 2008

PRYOR CASHMAN LLP

By: _/s/ Todd Soloway_
Todd Soloway
tsoloway@pryorcashman.com
Jonathan T. Shepard
jshepard@pryorcashman.com
Pryor Cashman LLP
410 Park Avenue
New York, NY 10022
Telephone: 212-421-4100
Facsimile: 212-326-0806

Attorneys for Defendants/Counterclaimants

---

ego counterclaim demonstrate that Arcon is completely influenced and governed by Falke and Gemignani and that they utilized the corporate instrumentality to gain access to and steal nearly $2,000,000 from the East 29th Street Account. However, if the Court needs further facts to amplify the pleading, Counterclaimants respectfully request the opportunity to provide such facts to the Court in an Amended Counterclaim.

744526                                    14